Mr. McMahon, let's wait for the door to close as everybody leaves the room. Okay, Mr. McMahon. Thank you, Your Honor. My name is Gerald McMahon. I am attorney for defendant appellant Anthony Romanello. Your Honor, Franklin Delano Roosevelt had recently completed his first term when Mr. Romanello was born. The year was 1937. When my client was remanded two weeks before Christmas, he was 86 years old. There are, as of January 4th, 16 days ago, 156,711 prisoners in the Federal Bureau of Prisons. I would venture to say, Your Honors, that Mr. Romanello, as he sits in MDC today, is likely the oldest inmate out of those 156,000 prisoners. The other statistics which I've cited in my brief make it clear that there were only 480 prisoners over the age of 70. He's very old, but the fact that he may be the oldest is not, just by itself, is not necessarily a get-out-of-jail-free card. Absolutely not, Your Honor. So you've got exceptional reasons to explain, and I think you might go back on what Judge Glasser said in the prior proceeding. You might also want to talk about the nature of the actual event here for which he was convicted or charged. In effect, this was something that actually was provoked. I mean, it wasn't the usual kind of extortion case, right? It was a provoked- Yes, Judge. And there was a conspiracy charge, too, wasn't there? There was. It was the same conduct form, the basis of it. There was no additional. Was that the basis of the conspiracy charge? Well, there were three meetings at the restaurant which my client went. And as a background, my client had a long-term relationship with the owner of the restaurant and the victim. He had eaten at his restaurant many times. So he had gone there two previous times to collect on the debt, amicable relationship. And they were back and forth. The complainant didn't want to pay. And then he went a third time. It actually wasn't his debt, right? No, he was- For half an hour or something of that sort. He was talking about no good deed goes unpunished. Mr. Rominello was a friend of the Irish bookie who was owed $86,000. Mr. Rominello had no part of the $86,000. He was also a friend- He went there as an enforcer for the debt. Pardon me? I mean, he went there as an enforcer for the- He didn't go there as an enforcer, Your Honor. The record is pretty clear that. And the videotape was introduced into evidence. It's pretty clear that this is not Luca Brasi coming into a restaurant as an enforcer. The district court referenced, though, two relatively recent convictions for conduct similar to the criminal activity group. What were those convictions? First of all, let me disagree with the concept that they were recent convictions. One of the convictions was in 2012 based on conduct that occurred in 2010. So that's seven years before. And the other conviction was in 2006, was the arrest in 2007. So that's 17 years before. And the court found that there were substantial indications, as the government points out, that Mr. Rominello's working life had been dedicated to participation in an organized crime family. Do you disagree with that characterization also? I would not. You would not? I would not, Judge. But the point is this. Is Mr. Rominello going to be convicted because he associates with the mafia? Or is he going to be convicted because he did something wrong? We're talking about the conviction. We're talking about whether the district court made a mistake in declining to exceed to your request that he not be incarcerated pending sentencing. There's one thing that the district court was absolutely correct in, and that's in agreeing with my assessment that this is not the crime of the millennium. This is not a traditional mafia case where people are shot up, people are beaten. My client, this crime consisted of one punch, no injuries, not a mark. But is the district court wrong if it says, okay, the default is that he should be incarcerated, and so I have to find exceptional circumstances in order to decide that he should not be? And I look at him, and he's old, but he's dedicated the last ten years or however long it is, a substantial portion of his life to participation in organized crime family. He's been convicted of other similar offenses. He pleaded guilty to witness intimidation and so on. Why was the district court wrong to say, look, there are exceptional circumstances. He's old, but he's doing things that are threatening, and so there just aren't exceptional circumstances here about incarcerating somebody who committed a violent crime. Well, Judge, there is the prior record, and then there is the conduct which formed the basis of the conviction. The conduct which formed the basis of the conviction, we submit, is not violent. My client was called an old, washed-up Italian who didn't have the balls to punch the complainant. Now, he was provoked. This is not a situation where he went in to commit assault to collect the debt. He was provoked, and that's how he reacted. But if, in fact, he has the history and he's still doing things in the same vein, why couldn't the district court say there's no exceptional circumstances here, this is not like something out of the ordinary? Because, Your Honor, I don't think that conduct that occurred 12 years ago and 17 years ago is a slice of recent history that would justify wiping away the statute. But you're saying exceptional circumstances were his age. That was one piece of it. The other part of it, Judge, is that the incident in the restaurant is May 11, 2017. The Eastern District Prosecutor's Office knew about this crime. They had the videotape within a year. They waited four years, 11 months, and one week to indict my client. And the reason they did that was because they were hoping that he would commit another crime so they could have two predicate acts and make a recoup. He didn't. He committed no crimes. And so they said, well, let's go ahead and go with the videotape. So the exceptional time between the May 7th— They brought the prosecution within the statute of limitations, right? Yes. They didn't do anything unlawful. It is an exceptional circumstance for the prosecutors to want to build a stronger case and then decide to proceed on the lesser charges. Why is that exceptional? Because they didn't do that to build a stronger case, Your Honor. The record is clear. Well, if he had committed another offense where they could— Well, he didn't. He didn't commit it. They thought maybe he would, and so they waited to see. Right. And they waited until three weeks before the statute of limitations expired. When is sentencing scheduled for? March 4th, Your Honor. March 4th, so two months from now. Yes. And, you know, at his age, and I would add that he has been— Unlike the other inmates at MDC, he is not allowed to take his own medications because they have basically said he's not coherent enough to take them on a proper schedule. So who knows where he's going to be between now and March 4th. What is our standard of review here? Well, the— Well, the factual findings are reviewed for clear error. We're not talking about the actual conclusion here of exceptional circumstances. That's—it seems to me kind of a room for maybe deference to the district court on that. Your Honor, the— Even if Ruler City is district judge, we might release him, but it would be reasonable either way. Your Honor, I would say this. The cases—the Chagas case, this court in DeSoma, Campbell, Rentas, those cases, this panel is not without authority and power to right the wrong. And I think fair determination has ultimately come down to that. Has a mistake been made? When you are in a situation like this gentleman is, we don't know if he's going to make it to March 4th. Okay, we've said that the findings of the district judge were clearly erroneous or that he committed an error of law. He should affirm the district court's order of detention or release. So what are the errors? Is there an error of law or a clearly erroneous factual finding? The error of law is that he concluded that his age, his exceptional age and rare age, combined with the delay between the time of the crime and the time of the remand— Did not qualify as exceptional circumstances? No, yeah, he concluded— They are, Judge. If there's 150,000 inmates and he's the oldest one, I mean— Do you know that he's the oldest one? You said at the beginning it's likely he's the oldest one. I mean, is he actually the oldest one? No, the DOP doesn't say. But if there were 428 over the age of 70, this guy's 86. So let's assume he's one or two or three, if there are any others. And, Judge, if they're going to wait five years, is he such a bad guy that you wait four years, 11 months and one week to indict him because you want to add another charge and he doesn't commit it? So let's go ahead and indict him because we have the videotape. Is that proper? At least let the guy know if he's out until sentencing, he can get voluntary surrender to a designated institution. Do you think we should grant release here to punish the government for that conduct? Well, Your Honor, I made a motion to dismiss. That will be here when there is a plenary appeal. There are other things that occurred during this trial, which will also be part of that appeal. And I fully suggest that there will be a new trial for Mr. Romanello. That's not before Your Honor at the moment. But there are issues, absolutely. And I have reserved some time for rebuttal. What sentence does he face here? Pardon me? What sentence does he face here? Zero to 20, Your Honor. What? Zero to 20? There's no mandatory minimum. And unlike some of the cases cited by the government, there was a five-year mandatory minimum for one of the cases. There's no mandatory minimum. Okay, thank you very much, Mr. McMahon. You've reserved time for rebuttal, so we will hear from you again. But let's turn to the government and Ms. Schuman. May it please the Court. My name is Rebecca Schuman, and I'm an assistant United States attorney in the Eastern District of New York. I represented the government in the district court. There is a single, narrow question before this court. Whether the district judge clearly erred in the factual finding that Romanello's age and the time from the commission of the offenses of conviction to the jury's verdict did not constitute exceptional reasons justifying his release pending sentencing. Well, why is it a factual finding? Isn't that a legal determination as to whether a clerk qualifies under the statute? I mean, whether something's exceptional circumstances. Shouldn't that be a legal question? I don't believe so, Your Honor. Factual findings, I believe the language used is specific predicate factual findings. Exceptional circumstances has been defined by this court legally, but district judges are required to make factual findings. Right, so the district judge makes a factual finding about what his conduct was and the threats he poses and all of that kind of stuff. But whether it fits within the concept of exceptional circumstances as we have articulated it, that's a legal question, is it not? I would still submit, Your Honor, it's a factual question. It's based on the specific facts of this case. So my question is, did he clearly hear it? Had a factual mistake been made? A mistake of findings, in fact? That's the issue? Yes, Your Honor. Well, your adversary said it was barely a punch. The guy wasn't hurt. He was a, this guy's 87 years old and maybe among the oldest in the prison system. There's no danger of a community issue here. There's no risk of flight issue here. The statute does require remand, except for exceptional circumstances. But under those circumstances, why should he be released as he was throughout the case up to this point? I think there are a few factual corrections to make there, Your Honor. Firstly, the district court did not actually find that Mr. Rominello either was not a danger to the community or a risk of flight. Did he make a finding on that question one way or the other? He did not, Your Honor. That question was skipped over and the majority of the detention hearing addressed exceptional reasons. Right, but you haven't argued that there was a risk of flight or danger to the community, have you? We have not, Your Honor. But in the event the court were inclined to find that exceptional reasons existed, the appropriate remedy would be remand because the district court would first need to find that Mr. Rominello neither was a danger to the community or a risk of flight. And frankly, I think there is evidence in the record indicating the district court had concerns. The district court said on the record all of that information was prior convictions and the witness intimidation charge. And the district court said intimidating witnesses, which goes to the heart of our criminal justice system, would be a danger to the community. And didn't the district court say at one point, it's clear on this record that – oh, I see. The co-defendant had not proved a clear evidence against him that he was neither a risk of flight nor a danger to the community. So there's a lot of suggestion that the district court would decide that Mr. Rominello was a danger to the community. That's correct, Your Honor. And because although Mr. Rominello – The district court also referred to the pretty straightforward command of Congress in sections 3143 and 3145, which kind of suggests that the district court was thinking about danger to the community and not just exceptional circumstances, right? I believe that's right. And while Rominello repeatedly derides this case as a one-punch case, he ignores both the relevant law and the facts. First, as this court is aware and as there is no dispute, the offenses of conviction constitute crimes of violence. And while there is no dispute between the parties that Rominello punched one of the victims once, the evidence at trial likewise established that Rominello caused the victim to fear for his and his family's lives. While counsel for Mr. Rominello today asserts that this was an issue of Rominello being provoked about certain statements being made to him, that account is not, in fact, in the trial record. Those are arguments that defense counsel made in his opening and in his summation. They are questions he asked to witnesses who either said they did not know or they did not remember such statements. So what he's relying on is not an accurate reflection of the record, because we're talking about a case in which one of the victims said, quote, at transcript 131, I was afraid, I said, if you punch me in the middle of the day in my restaurant, what are they going to do at night when nobody watches? This is a case of real danger. And while Rominello has repeatedly referred to the statistics of age in BOP facilities, frankly, that's comparing apples to oranges. Rominello, unlike these other inmates, frankly, potentially all, if not the vast majority of inmates, Rominello is different in that he committed a crime of violence at age 79. He cannot now use his age as a shield to avoid otherwise mandatory detention. That simply would create a disparity among similarly situated defendants. Under Rominello's pronouncement of what the law should be in this case, an individual who would commit a crime of violence, the exact same crime of violence here, if he commits the crime at 20, is convicted at 27, he goes to jail simply by virtue of his age being younger than a man who chose to commit such a crime at age 79. That simply cannot be the law. Why can it simply not be the law? Why is it extraordinary that he's doing it in his 80s? That he's in his 80s and a person, I mean, normally you would expect somebody committing violent crimes to be younger. So why is it that it can't simply be the law? Well, I think, Your Honor, the Second Circuit has observed, specifically, I think most recently in Leah, that personal circumstances do not constitute exceptional reasons. Courts across the country to address the issue of age have found, often pointing to the issue of disparities, that age does not constitute an exceptional reason even when accompanied by other- One gets the feel here that somebody's trying to make a notch for themselves by virtue of the fact that this guy was associated with organized crime at some point. The prosecutor is going after him for that reason in part. And also that the case was kind of thin and you were waiting for maybe another crime before you prosecuted because if he was a serious danger to the community, as you say, or whatever, why wouldn't you have gone after him as soon as you had this case? As soon as you knew the facts of this case? Why did you wait? Your Honor, I don't have information to respond to on that, and nor do I think there's information on the record to that effect. I do think it's worth noting that this was not a typical organized crime case in the sense that the only reason- That's fair enough to say. Yes, Your Honor, I think we can all agree. But here, the only reason that the fact of the defendant's organized crime ties came into evidence was because the victims in this case understood the defendant to be a member of the mafia and therefore his presence, his statements, as well as his assault all led them to fear what the defendant would do if the debt were not repaid in full. Just to clarify also, the crime that he was convicted of was not a simple state assault. It was a conspiracy to engage in extortion and collection of credit, extortion and collection of credit. And that's what the jury found him guilty of. So that had additional elements to it. Is that correct? That's correct, Your Honor. I was just going to say, so somebody who has that reputation of being convicted of organized crime can be 86 and be very threatening because the idea is he can bring the resources of that background to bear on the people he's talking to. I think that's correct. And in fact, Your Honor, I would argue that someone who's a member of organized crime at 86 versus at 20 is far more intimidating, given that the person at 86 is more likely to be a higher member of the organized crime family. So in fact, the age, I think, turns it around and makes that man more intimidating to the victims who knew him to be a member, or I should say understood him to be a member of the Genovese crime family. Well, that's a very nice thing that you said about octogenarians. I'm trying, Your Honor. Unless the court has any... Let me just ask you, so if it were to go back, though, does the government contend that he poses a flight risk? I don't believe at this time we contend he poses a flight risk. I do, however, think, Your Honor, there are significant indications that he does pose a danger to the community. I think if the court were inclined to find that exceptional circumstances did exist and or to find any concerns with MDC warranted reconsideration, I believe that remand to the district court would be required so that, one, the district court could consider any such issues and weigh in the first instances specifically in regards to the question of flight risk and danger to the community. The question that I raised with your adversary and persists in my mind is the extent to which we sit as, in effect, another district judge would and respond in the same way that he would. Or can it be reasonable for both for a decision? Could I think maybe the guy should be released? Maybe these were exceptional circumstances, but I should defer to some degree to the district court's judgment. I do believe deference is more than appropriate under the circumstances. I continue to submit that clear error is the standard, but also we're talking about a district judge who viewed the defendant not for one day, not heard about him in a courtroom, but not only through a one-week trial, but through two days of jury selection, through multiple pre-status conferences. This is a district judge who had the opportunity to view and understand the defendant as an individual, albeit an octogenarian, but had the opportunity to make a conclusion that we are talking about a lucid, highly mobile individual who, notwithstanding hearing loss, notwithstanding certain blood pressure issues, is in good shape. When is the date for sentencing here? It is March 4th, Your Honor, both for Mr. Rominello and his co-defendant. Unless the court has any further questions, we rest on our submissions and request that the court deny Rominello's motion for bail pending sentencing. Thank you very much. Ms. Schuman, we'll hear back from Mr. McMahon on rebuttal. Thank you, Your Honors. First of all, the government now says that my client is a danger to the community. As Judge Walker pointed out, they waited four years and 11 months and three weeks to arrest him for this charge. Not only that, after he gets arrested, the government consents to his release on a $500,000 bond, not $1 million, not $10 million, a $500,000 bond. He was arrested in the morning. He was released in the afternoon on consent. The only reason that they're making the claim that he's a danger to the community is to keep him in here. They didn't have to make that claim after he was- I understand that, Judge, but he was- That raises that whole issue. If he goes back, then maybe the judge will- But I think- All the judge had to do was look at exceptional circumstances. Yes, Judge, but look at what Judge Glasser said about him. I quoted at length. Judge Glasser knew him better than Judge Committee. At length, when he sentenced him to probation after a plea of guilty, he said, the guy's a gambler. And he has been a gambler since he's 28 years old. And on occasion, you have to try and use a little bit of threat of force to collect a gambling debt. That's what Judge Glasser said in 2012 when he gave him probation. Now, are we going to believe the government that he's a danger? Or are we going to believe Judge Glasser? I'll go with Judge Glasser. And the other thing, Your Honor, is that my client- I'm sorry. So people who are gamblers, they're just entitled to use violence every so often to collect on their debts and not treat that as a violent crime? No. But here's the thing, Your Honor. The jury was out three days. I think there were only three days of trial testimony. And the jury was out three days because they wrestled with the idea, was the punch because he was collecting a debt or because he insulted him by calling him a washed-up Italian? If the punch was because of the provocation, then it's not extortion. And we submit that when this court gets the plenary appeal, that's the conclusion that they'll come to. I do want to add one thing. My client was in the military. He has a VA pension. He has Social Security. So he has sources of income for many years and not just from other extra-legal activities. If there are no other questions, Your Honor, I'll rush. Thank you very much, Mr. McMahon. The case is submitted.